**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL KENDRICK,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-01642** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **C.O HANN, et al.,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the Court is the motion for summary judgment (Doc. No. 48) filed by

Defendants C.O. Hann ("Hann"), C.O Anders ("Anders"), Unit Manager Kendrick ("Kendrick"),

and Kevin Kauffman ("Kauffman"). The motion is fully briefed and ripe for disposition.

## I.    BACKGROUND

On September 24, 2019, <u>pro se</u> Plaintiff Paul Kendrick ("Plaintiff"), who is currently

incarcerated at the State Correctional Institution Greene in Waynesburg, Pennsylvania ("SCI

Greene"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C.

§ 1983 against Defendants. (Doc. No. 1.) The above-captioned action is proceeding on

Plaintiff's amended complaint. (Doc. No. 35.) In his amended complaint, Plaintiff alleges that

on July 6, 2018, while he was incarcerated at the State Correctional Institution in Huntingdon,

Pennsylvania ("SCI Huntingdon"), Defendant Hann served him with a misconduct report stating

that Plaintiff had threatened Defendant Hann and his family with serious bodily harm. (Doc. No.

35 ¶ 8.) On July 11, 2018, Defendant Hann denied Plaintiff his yard privileges, "claiming that

Plaintiff was on yard restriction due to [the] misconduct issued on" July 6, 2018. (<u>Id.</u> ¶ 9.)

Plaintiff's yard privileges were denied again on July 12 and 13, 2018. (<u>Id.</u> ¶ 10.) Plaintiff avers

that he never received a disciplinary hearing for the misconduct report. (<u>Id.</u> ¶ 12.) Plaintiff

prepared a grievance and submitted it to Defendant Kendrick. (<u>Id.</u> ¶ 14.) Defendant Kendrick

responded that neither the yard restriction nor the misconduct report was processed or served upon Plaintiff. (Id. ¶ 17.) Plaintiff appealed the denial of his grievance to Defendant Kauffman, who denied the appeal. (Id. ¶¶ 19-20.) Plaintiff subsequently appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. ¶ 21.) On November 13, 2018, Plaintiff received notice that SOIGA would dismiss his appeal if he failed to submit specific information within fifteen (15) working days. (Id. ¶ 22.) Plaintiff avers that the notice was dated September 20, 2018, but that Defendant Kauffman deliberately withheld it from Plaintiff until well past the fifteen (15)-day deadline. (Id. ¶¶ 23-25.)

Plaintiff also avers that on July 13, 2018, while he was incarcerated in the Restricted Housing Unit ("RHU"), Defendant Anders poured urine into his cell. (Id. ¶¶ 27-30.) Plaintiff avers that Defendant Anders knew or should have known that Plaintiff is asthmatic. (Id. ¶ 32.) Plaintiff alleges that he suffered "extreme anxiety, severe chest pains, psychological torture, and mental anguish," and that he continues to suffer from headaches and shortness of breath "due to being asthmatic and being forced to inhale urine." (Id. ¶¶ 32-33.) Plaintiff grieved the matter but avers that he was unable to properly exhaust his administrative remedies because Defendant Kauffman again deliberately withheld a notice from SOIGA that Plaintiff's appeal would be dismissed if he did not submit specific information within fifteen (15) working days. (Id. ¶¶ 36-45.) Based on the foregoing, Plaintiff alleges that his First, Eighth, and Fourteenth Amendment rights were violated. (Id.¶¶ 47-50.) He seeks declaratory relief as well as damages. (Id. at 7-9.)

Defendants filed their motion for summary judgment on January 29, 2021. (Doc. No. 48.) They filed their statement of undisputed material facts and brief in support of their motion on March 12, 2021. (Doc. Nos. 53, 54.) On March 12, 2021, observing that Defendants raised the issue of whether Plaintiff properly exhausted his administrative remedies with respect to his

claims in accordance with the Prison Litigation Reform Act ("PLRA"), the Court issued a

Paladino Order informing the parties that it would consider the exhaustion issue in the context of

summary judgment and, by doing so, would consider matters outside the pleadings in its role as

factfinder.[1]  (Doc. No. 55.)  The Court directed Plaintiff to file a brief in opposition addressing

the issue of administrative exhaustion and a statement of material facts responding to

Defendants' statement within thirty (30) days.  (Id.)  Plaintiff filed his response on April 9, 2021.

(Doc. No. 56.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  "[T]his standard provides

that the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome

of the case under applicable substantive law.  See id. at 248; Gray v. York Newspapers, Inc., 957

F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at

257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88

(3d Cir. 1991).

---

[1] See Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018).

When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement

required [to be filed by the movant], as to which it is contended that there exists a genuine issue

to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement

required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A

party cannot evade these litigation responsibilities in this regard simply by citing the fact that he

is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No.

09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not

excused from complying with court orders and the local rules of court"); Thomas v. Norris, No.

02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must

follow the Federal Rules of Civil Procedure).

## III.    STATEMENT OF MATERIAL FACTS[2]

Plaintiff was incarcerated at SCI Huntingdon in July of 2018. (Doc. No. 53 ¶ 1.)

Defendants Hann and Anders were Correctional Officers at SCI Huntingdon during this time.

(Id. ¶ 2.) Defendant Kendrick was the unit manager of the Restricted Housing Unit ("RHU") at

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in
opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion
for summary judgment shall include a separate, short and concise statement of material facts
responding to the numbered paragraphs set forth in the statement [of material facts filed by the
moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See
M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the
record that support the statements. See id. Finally, the Rule states that the statement of material
facts required to be served by the moving party will be deemed to be admitted unless
controverted by the statement required to be served by the opposing party. See id. Unless
otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts.
(Doc. No. 53.) While Plaintiff filed a brief in opposition to Defendants' motion for summary
judgment and a statement of disputed factual issues (Doc. No. 56), his statement of disputed
factual issues is not a response to Defendants' statement of facts that complies with Local Rule
56.1. Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to
be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No.
3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to
file this [responsive statement of material facts] results in admission of the moving party's
statement of facts").

SCI Huntingdon in July of 2018.  (Id. ¶ 3.)  Defendant Kauffman was the Superintendent of SCI Huntingdon in July of 2018.  (Id. ¶ 4.)  Plaintiff "was unable to go to yard a total of four times in July of 2018."  (Id. ¶ 5.)

The Pennsylvania Department of Corrections ("DOC") has "established a formal policy and a procedures manual for inmates, which must be followed by inmates who file grievances while incarcerated at state correctional institutions operated by the" DOC.  (Id. ¶ 6.)  Grievances are used to "allow an inmate to bring concerns and complaints to the attention of prison officials."  (Id. ¶ 7.)  "All inmates, regardless of where they are housed in an institution, may file grievances."  (Id.)

The DOC's grievance procedures are set forth in DOC Administrative Directive 804 ("DC-ADM 804").  (Id. ¶ 8.)  Pursuant to the DC-ADM 804, the grievance system has three (3) tiers: "(1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the Secretary's Office of Inmate Grievance and Appeals for final review."  (Id. ¶ 9.)  "[A]n inmate who has been personally affected by a Department or facility action or policy [is] permitted to submit a grievance or appeal."  (Id. ¶ 10.)  "[A] grievance must be submitted in writing, using the grievance form available on all housing units or blocks, within 15 working days after the events noted in the grievance."  (Id. ¶ 11.)  The grievance must include a statement of relevant facts, including the date, time, and location of events; the identities of any individuals involved; "any claims the inmate wishes to make concerning violations of DOC directives, regulations, court orders, or other law; and any compensation or legal relief desired."  (Id. ¶ 12.)

If an inmate is dissatisfied with the initial response, he may appeal that response to the Facility Manager.  (Id. ¶ 13.)  The Facility Manager "may uphold the response, uphold the

inmate, dismiss the grievance (either as untimely or on the merits), or uphold in part and deny in part." (Id. ¶ 14.) The Facility Manager may also remand the matter "for further investigation or consideration." (Id.) The Facility Manager's response may be appealed to SOIGA. (Id. ¶ 15.) "Only issues raised in both the original grievance and the appeal to the Facility Manager may be appealed to this level." (Id.) SOIGA "may uphold the response, uphold the inmate, dismiss, or uphold in part and deny in part." (Id. ¶ 16.) Alternatively, "the Chief Grievance Officer may remand the grievance to the facility for further investigation or reconsideration or may refer the appeal to a different bureau." (Id.) "An inmate has not exhausted the grievance procedure unless a grievance is properly appealed to" SOIGA. (Id. ¶ 18.) None of the grievances related to this action "were properly taken to final review" by Plaintiff. (Id. ¶ 19.)

## IV. DISCUSSION

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants Kendrick and Kauffman do not have the requisite personal involvement; and (3) Plaintiff has failed to state claims regarding violations of his First and Fourteenth Amendment rights. (Doc. No. 54 at 3.) The Court considers Defendants' arguments in turn below.

### A. Exhaustion of Administrative Remedies

Pursuant to the PLRA, a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. See id. Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to

invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." See Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," see Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." See Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. See Harris, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. See Warman, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. See Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." See id. at 1859.

First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." See <u>id.</u> Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." See <u>id.</u> Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." See <u>id.</u> at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See <u>Rinaldi v. United States</u>, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

See <u>Hardy v. Shaikh</u>, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies. (Doc. No. 54 at 5-8.) They assert that "none of the grievances relating to this action were brought to final review." (<u>Id.</u> at 7.) The record reflects that Plaintiff submitted Grievance #746183 regarding the yard restrictions on July 11, 2018. (Doc. No. 53-4 at 6.) When Plaintiff ultimately appealed the denial of his grievance to SOIGA, a notice was issued indicating that his appeal was incomplete because he did not provide the following documents: (1) a copy of his initial grievance; (2) the initial review response; (3) a copy of his appeal to the Facility Manager; and (4) the Facility Manager's response. (<u>Id.</u> at 2.) Plaintiff was advised that he had fifteen (15) working days from the date of the notice to provide

those documents; otherwise, his appeal would be dismissed.  (Id.)  The notice was dated

September 20, 2018.  (Id.)  The notice, however, is also stamped that it was received on

November 21, 2018.  (Id.)

On July 13, 2018, Plaintiff submitted Grievance #746535 regarding the alleged incident

with Defendant Anders.  (Doc. No. 53-5 at 6.)  When Plaintiff ultimately appealed the denial of

his grievance to SOIGA, a notice was issued indicating that his appeal was incomplete because

he did not provide the following documents: (1) a copy of his initial grievance; (2) the initial

review response; (3) a copy of his appeal to the Facility Manager; and (4) the Facility Manager's

response.  (Id. at 2.)  Plaintiff was advised that he had fifteen (15) working days from the date of

the notice to provide those documents; otherwise, his appeal would be dismissed.  (Id.)  The

notice was dated September 20, 2018.  (Id.)  The notice, however, is also stamped that it was

received on November 21, 2018.  (Id.)

In response, Plaintiff has submitted a declaration in which he avers that the notices from

SOIGA were withheld from him for approximately two (2) months.  (Doc. No. 56-1 at 2-3.)

During his deposition, Plaintiff testified that after receiving the notices, he still tried to appeal but

was subsequently informed that his grievances were untimely.  (Doc. No. 53-1 at 43-44.)  He

argues that his remedies were rendered unavailable to him because he did not receive the notices

from SOIGA until well after the fifteen (15)-day deadline for submitting the required

documentation had passed.  (Doc. No. 56 at 2-3.)  DC-ADM 804 provides that SOIGA has thirty

(30) days to respond to an appeal, and that both the inmate and the Facility Manager shall receive

notice of SOIGA's decision.  (Doc. No. 53-2 at 29.)  The Third Circuit recently concluded that

"[a]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time

limits prescribed by its own policies, it has made its administrative remedies unavailable and the

prisoner has fully discharged the PLRA's exhaustion requirement." See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019).

While Plaintiff recognizes that his appeals to SOIGA were incomplete, he avers that his administrative remedies were rendered unavailable to him because he did not receive SOIGA's notices about his incomplete appeals until well after the fifteen (15)-day deadline to remedy the deficiencies had expired. Given the state of the record, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Plaintiff such that his failure to properly exhaust his claims could be excused. Thus, the Court declines to grant summary judgment to Defendants on the basis that Plaintiff failed to exhaust his administrative remedies. The Court considers Defendants' other arguments in support of summary judgment below.

## B.    Personal Involvement

Defendants Kendrick and Kauffman maintain that they are entitled to summary judgment because they lack the requisite degree of personal involvement to be held liable. (Doc. No. 54 at 8-10.) They assert that "Plaintiff's only arguments for their liability are based on either their supervisory capacities or the fact that their responses to his grievances were not what Plaintiff would have preferred; . . . neither is sufficient for § 1983 liability." (Id. at 10.) Plaintiff argues that Defendants Kendrick and Kauffman became responsible for the alleged violations "when they failed to correct them in the course of their supervisory responsibilities and denied [his] grievances and appeals." (Doc. No. 56 at 4.)

Inmates do not have a constitutional right to prison grievance procedures. See Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the

response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action). Consequently, any allegations asserted by Plaintiff in an attempt to establish liability against Defendants Kendrick and Kauffman based solely upon the substance of their respective responses to Plaintiff's grievances do not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that involvement in the

post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3.

It also appears that Plaintiff attempts to assert claims against Defendants Kendrick and Kauffman based upon their respective supervisory positions. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to 42 U.S.C. § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

While Plaintiff suggests that Defendants Kendrick and Kauffman failed to correct the alleged violations, the Supreme Court has "rejected the argument that a supervising public official has an affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." See Chinchello v. Fenton, 805

F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362 (1976)). Moreover, Plaintiff

has cited no evidence suggesting that Defendants Kauffman and Kendrick had

"contemporaneous knowledge of the offending incident or knowledge of a prior pattern of

similar incidents." See id. Moreover, nothing in the record presents "circumstances under which

[Defendants Kendrick and Kauffman's] inaction could be found to have communicated a

message of approval to the offending subordinate." See id. Plaintiff also fails to provide any

evidence of a policy that allegedly caused the violation of his constitutional rights. See

McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

Plaintiff also suggests that Defendants Kendrick and Kauffman are liable for failing to

provide adequate training. (Doc. No. 35 ¶ 50.) "Under Section 1983, a supervisor may be liable

for [his or her] failure to train or supervise employees." Whitfield v. City of Phila., 587 F. Supp.

2d 657, 666 (E.D. Pa. 2008). A claim for liability based upon a failure to train involves four (4)

elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the

supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and

(4) the injury resulted from the policy or practice. See Sample, 885 F.2d 1099, 1118 (3d Cir.

1989). A supervisor may be held liable where a need for "more or different training . . . is so

obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train

. . . can fairly be said to represent official policy," and where that failure to train "actually causes

injury.". See City of Canton v. Ohio, 489 U.S. 378, 390 (1989). In addition,

> [i]n resolving the issue of [supervisory] liability, the focus must be on adequacy of
> the training program in relation to the tasks the particular officers must perform.
> That a particular officer may be unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's shortcomings may have resulted
> from factors other than a faulty training program . . . . Neither will it suffice to
> prove that an injury or accident could have been avoided if an officer had had better
> or more training . . . . Moreover, for liability to attach . . . the identified deficiency
> in [the] training program must be closely related to the ultimate injury.

See id. at 390-91.  As noted supra, Plaintiff has failed to present evidence suggesting that an existing policy created a risk of constitutional injury.  Plaintiff's conclusory allegations, without more, are insufficient to maintain a failure to train and supervise claim against Defendants Kendrick and Kauffman.  The Court, therefore, will grant summary judgment to Defendants Kendrick and Kauffman.

### C.     First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied when the adverse action is "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to

prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

In his amended complaint, and during his deposition, Plaintiff suggested that he was retaliated against after he filed his grievance regarding the denial of yard time by Defendant Hann. (Doc. No. 35; Doc. No. 53-1 at 29.) It is well-settled that inmates engage in protected activity when they file grievances. See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011). The Court, therefore, must next consider whether Plaintiff suffered adverse action. To be actionable under § 1983, the adverse action "need not be great" but "must be more than de minimis." See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). Moreover, "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be de minimis if considered in isolation." See Brennan v. Norton, 350 F.3d 399, 422 n.17 (3d Cir. 2003). In the instant case, the Court agrees with Defendants that Plaintiff has not cited evidence creating a genuine issue of material fact that the denial of yard on four (4) occasions rises to the level of adverse action. See Burgos v. Canino, 358 F. App'x 302, 307 (3d Cir. 2009); Calatayud v. Townley, No. , 2015 WL 514594, at *6 (S.D. Ill. Feb. 6, 2015) (concluding that a two (2)-month denial of access to the yard and gym did not rise to the level of sufficient adverse action for the inmate-plaintiff's retaliation claim). Accordingly, Defendant Hann is entitled to summary judgment with respect to any retaliation claim that Plaintiff is asserting against him.

The Court assumes without deciding that Defendant Anders' alleged act of pouring urine outside of Plaintiff's cell constitutes sufficient adverse action for purposes of a retaliation claim. With respect to the third prong of a retaliation claim, while causation may be established by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." See Watson, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. During his deposition, Plaintiff testified that Defendant Anders poured urine outside of his cell after telling Plaintiff that "this is what they do to people that like to harm staff." (Doc. No. 53-1 at 56.) Plaintiff inferred that Defendant Anders was "referring to the incident with Defendant Hann." (Id. at 57.) Courts, however, "have consistently rejected retaliation claims 'against one defendant based on [protected activity] against another [individual]' for lack of retaliatory motive." See Murray v. Smithbower, No. 1:17-cv-127, 2021 WL 1103524, at *7 (M.D. Pa. Mar. 23, 2021) (quoting Victor v. Lawler, 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010, aff'd, 565 F. App'x 126 (3d Cir. 2014)); see also Royster v. Beard, 308 F. App'x 576, 597 (3d Cir. 2009) (affirming the district court's grant of summary judgment in favor of a defendant on the inmate-plaintiff's claim that he was retaliated against by an individual who was not the target of his protected activity); Evans v. Rozum, No. 07-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) (concluding that "[t]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others"). Plaintiff has not presented any evidence suggesting that he had engaged in protected activity targeted toward Defendant Anders prior to Defendant Anders allegedly throwing urine outside of Plaintiff's cell. The Court, therefore, will grant

summary judgment to Defendant Anders with respect to Plaintiff's First Amendment retaliation claim.

**D.      Fourteenth Amendment Claim**

Plaintiff avers that Defendant Hann violated his Fourteenth Amendment due process rights by issuing a false misconduct report that led to Plaintiff receiving a yard restriction sanction, causing him to miss yard privileges for four (4) days.  (Doc. No. 35.)  The Fourteenth Amendment's Due Process Clause prohibits states from denying individuals "life, liberty[,] or property" without due process of law.  See U.S. Const. amend. XIV.  As an initial matter, "the filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  See Seville v. Martinez, 130 F. App'x 549, 551 (3d Cir. 2005).  Accordingly, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."  See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002).  Procedural due process protection, however, "for a state created liberty interest . . . is limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  See Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In the instant case, Plaintiff avers that he never received a hearing for the misconduct issued by Defendant Hann.  (Doc. No. 56-1 at 1-2.)  Nevertheless, the Court agrees with Defendants that Plaintiff cannot maintain his due process claim because he has not established that he was deprived of a protected liberty interest.  As noted supra, Plaintiff was denied yard on four (4) occasions.  The Court, however, agrees with other courts that have concluded that a temporary yard restriction does not impose an "atypical and significant hardship" that is

sufficient enough to trigger due process protections.  See, e.g., Nelson v. Peed, No. 12-cv-2170,

2012 WL 4339095, at *3 (C.D. Ill. Sept. 20, 2012); Brady v. Smith, No. 1:09-cv-457-EJL, 2011

WL 2261054, at *2 (D. Idaho June 7, 2011); Benson v. Walker, No. 10-579-JPG, 2011 WL

846865, at *6 (S.D. Ill. Mar. 8, 2011); Kennedy v. McBurney, No. 2:07-cv-207, 2009 WL

884572, at *5 (W.D. Mich. Mar. 26, 2009).  The Court, therefore, will grant summary judgment

to Defendant Hann with respect to Plaintiff's Fourteenth Amendment due process claim.[3]

### E.  Eighth Amendment Claim

Finally, Plaintiff asserts that Defendant Anders violated his Eighth Amendment rights by

throwing urine outside of his cell on July 13, 2018.  (Doc. No. 35.)  An Eighth Amendment

claim includes both objective and subjective components.  See Wilson v. Seiter, 501 U.S. 294,

298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's

objective component.  See id.  The subjective component is met if the person or persons causing

the deprivation acted with "a sufficiently culpable state of mind."  See id.  In order to succeed on

a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was

incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-

official was deliberately indifferent to that substantial risk to his health and safety, and (3) the

defendant-official's deliberate indifference caused him harm."  See Bistrian v. Levi, 696 F.3d

352, 367 (3d Cir. 2015).  "[T]he Constitution does not mandate comfortable prisons."  Rhodes v.

Chapman, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth

---

[3] In his brief in opposition, Plaintiff also suggests that his due process rights were violated
because officials interfered with his ability to exhaust his administrative remedies.  (Doc. No. 56
at 8.)  As noted supra, however, Plaintiff has no constitutional right to grievance procedures;
accordingly, "violations of those procedures do not give rise to a due process violation."  See
Hagerty v. Smith, No. 3:18-cv-1973, 2021 WL 916201, at *3 (M.D. Pa. Mar. 10, 2021) (citing
Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)).

Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." See Hudson, 503 U.S. at 9.

Defendants recognize that Plaintiff's allegation "likely rise[s] to the level of a violation of the Eighth Amendment if it occurred as Plaintiff states, which is denied." (Doc. No. 54 at 2 n.1.) Defendants assert, however, that "Plaintiff still failed to exhaust his administrative remedies regarding that event." (Id.) As discussed supra, the Court has concluded that a genuine issue of fact as to whether Plaintiff's administrative remedies were rendered unavailable to him precludes a grant of summary judgment to Defendants on the basis that Plaintiff failed to properly exhaust his administrative remedies prior to filing the above-captioned action. Defendants have not addressed whether Defendant Anders' alleged act violated the Eighth Amendment, and at this juncture, the Court cannot properly consider the issue absent briefing from the parties. Accordingly, the Court will deny Defendants' motion for summary judgement with respect to Plaintiff's Eighth Amendment claim against Defendant Anders. This denial will be without prejudice to Defendants' right to file a renewed motion addressing Plaintiff's claim in the context of the standard set forth above.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment. (Doc. No. 48.) The motion will be granted as to Plaintiff's claims against Defendants Kendrick and Kauffman, his First Amendment retaliation claims against Defendants Hann and Anders, and his Fourteenth Amendment due process claim against Defendant Hann. The motion will be denied without prejudice as to Plaintiff's Eighth

Amendment claim against Defendant Anders.  Defendants will be permitted to file a renewed motion for summary judgment that addresses Plaintiff's Eighth Amendment claim in the context of the standard set forth above.  An appropriate Order follows.