IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL KENDRICK, | : | |
|     Plaintiff | : | No. 1:19-cv-1642 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| C.O. HANN, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Presently before the Court for resolution is the issue of whether Defendant Corrections Officer Anders ("Defendant Anders") has met his burden to establish the affirmative defense of Plaintiff Paul Kendrick ("Plaintiff")'s failure to exhaust administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") before commencing suit in federal court. To resolve this issue, the Court held an evidentiary hearing and heard oral argument from the parties on October 14, 2022. At the conclusion of that hearing, the Court ruled that Defendant Anders failed to meet his burden to demonstrate Plaintiff's failure to exhaust administrative remedies. This Memorandum sets forth the basis for the Court's ruling.

## I.  BACKGROUND[1]

Plaintiff is in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at State Correctional Fayette ("SCI Fayette") in LaBelle, Pennsylvania. He commenced this civil rights action in September 2019 by filing a pro se complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") concerning events that allegedly occurred while he was incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon").

---

[1] At this point in the litigation, only one claim against one Defendant remains—i.e., Plaintiff's Eighth Amendment claim against Defendant Anders. Therefore, the Court recites the background of this matter only as it is relevant to that claim.

(Doc. No. 1.)  Named as defendants were several individuals, all of whom Plaintiff alleged worked at SCI Huntingdon during the period of time relevant to his claims.  (Id.)

Following a motion to amend his complaint (Doc. Nos. 31, 33, 34), Plaintiff is now proceeding on an amended pro se complaint.  (Doc. No. 35.)  In his amended complaint, Plaintiff alleges that, on July 13, 2018, while he was incarcerated in the Restricted Housing Unit at SCI Huntingdon, Defendant Corrections Officer Anders ("Defendant Anders") poured urine into his cell.  (Id. ¶¶ 27-30; id. ¶ 32 (alleging that Defendant Anders knew or should have known that Plaintiff is asthmatic).)  As a result, Plaintiff asserts that he suffered from "extreme anxiety, severe chest pains, psychological torture, and mental anguish" and that he continues to suffer from headaches and shortness of breath "due to being asthmatic and being forced to inhale urine[.]"  (Id. ¶¶ 32-33.)  Plaintiff alleges that he grieved the matter in accordance with applicable DOC policy.  (Id. ¶¶ 36-45.)  Based upon these allegations, Plaintiff claimed that Defendant Anders violated his rights under the Eighth Amendment to the United States Constitution.  (Id. ¶¶ 47-50.)  As for relief, Plaintiff seeks damages, as well as declaratory relief.  (Id. at 7-9.)

Following the conclusion of discovery, Defendant Anders moved for summary judgment on Plaintiff's Eighth Amendment claim.  (Doc. No. 48.)  In particular, Defendant Anders asserted that Plaintiff had failed to exhaust his administrative remedies under the PLRA.  (Doc. No. 58 at 7.)  Under that statute, exhaustion of available administrative remedies is a prerequisite for a prisoner, such as Plaintiff, asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring

any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))).

Although Defendant Anders acknowledged that Plaintiff had made some efforts to exhaust his administrative remedies at SCI Huntingdon, he argued that Plaintiff had failed to properly (or fully) exhaust those remedies. (Doc. No. 58 at 7, 10.) Under the PLRA, proper exhaustion "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" See Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88). And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ).

Thus, in addressing Defendant Anders' failure-to-exhaust argument, the Court outlined the applicable procedural rules as follows:

> The DOC's grievance procedures are set forth in DOC Administrative Directive 804 ("DC-ADM 804"). (Id. ¶ 8.) Pursuant to the DC-ADM 804, the grievance system has three (3) tiers: "(1) an initial review by a Grievance Officer; (2) appeal to the Facility Manager or designee; and (3) appeal to the Secretary's Office of Inmate Grievance and Appeals for final review." (Id. ¶ 9.) "[A]n inmate who has been personally affected by a Department or facility action or policy [is] permitted to submit a grievance or appeal." (Id. ¶ 10.) "[A] grievance must be submitted in writing, using the grievance form available on all housing units or blocks, within 15 working days after the events noted in the grievance." (Id. ¶ 11.) The grievance must include a statement of relevant facts, including the date, time, and location of events; the identities of any individuals involved; "any claims the inmate wishes to make concerning violations of DOC directives, regulations, court orders, or other law; and any compensation or legal relief desired." (Id. ¶ 12.)

(Doc. No. 58 at 6.)

3

In light of these procedures, the Court examined the summary judgment record to determine whether Plaintiff had properly exhausted his Eighth Amendment claim against Defendant Anders in accordance with DC-ADM 804 before filing suit in federal court. In this regard, the Court stated as follows:

> On July 13, 2018, Plaintiff submitted Grievance #746535 regarding the alleged incident with Defendant Anders. (Doc. No. 53-5 at 6.) When Plaintiff ultimately appealed the denial of his grievance to SOIGA, a notice was issued indicating that his appeal was incomplete because he did not provide the following documents: (1) a copy of his initial grievance; (2) the initial review response; (3) a copy of his appeal to the Facility Manager; and (4) the Facility Manager's response. (Id. at 2.) Plaintiff was advised that he had fifteen (15) working days from the date of the notice to provide those documents; otherwise, his appeal would be dismissed. (Id.) The notice was dated September 20, 2018. (Id.) The notice, however, is also stamped that it was received on November 21, 2018. (Id.)
>
> In response, Plaintiff has submitted a declaration in which he avers that the notices from SOIGA were withheld from him for approximately two (2) months. (Doc. No. 56-1 at 2-3.) During his deposition, Plaintiff testified that after receiving the notices, he still tried to appeal but was subsequently informed that his grievances were untimely. (Doc. No. 53-1 at 43-44.) He argues that his remedies were rendered unavailable to him because he did not receive the notices from SOIGA until well after the fifteen (15)-day deadline for submitting the required documentation had passed. (Doc. No. 56 at 2-3.) DC-ADM 804 provides that SOIGA has thirty (30) days to respond to an appeal, and that both the inmate and the Facility Manager shall receive notice of SOIGA's decision. (Doc. No. 53-2 at 29.) The Third Circuit recently concluded that "[a]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." See Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019).
>
> While Plaintiff recognizes that his appeals to SOIGA were incomplete, he avers that his administrative remedies were rendered unavailable to him because he did not receive SOIGA's notices about his incomplete appeals until well after the fifteen (15)-day deadline to remedy the deficiencies had expired. Given the state of the record, the Court concludes that a genuine issue of fact exists as to whether the grievance process was rendered unavailable to Plaintiff such that his failure to properly exhaust his claims could be excused.

4

(Doc. No. 58 at 11-12.)  Based upon this record, the Court declined to grant Defendant Anders summary judgment on the basis that Plaintiff had failed to properly exhaust his administrative remedies.  (Id. at 12.)  Thus, the Court proceeded by addressing the merits of Plaintiff's claim.  (Id. at 12, 20-21.)

In this regard, Defendant Anders recognized that Plaintiff's allegations concerning the alleged incident "likely rise[s] to the level of a violation of the Eighth Amendment if it occurred as Plaintiff states, which is denied."  (Id. at 21.)   However, Defendant Anders largely based his summary judgment arguments on the assertion that Plaintiff had failed to properly exhaust his administrative remedies concerning that incident.  (Id.)  In other words, Defendant Anders did not meaningfully dispute whether his alleged conduct violated the Eighth Amendment.  (Id.)  As such, the Court denied Defendant Anders' motion for summary judgment on the merits, but afforded him an opportunity to file a renewed motion to address this claim.  (Id.)  As reflected by the Court's docket, Defendant Anders did not file a renewed motion for summary judgment.  Thus, on August 24, 2021, the Court issued an Order directing Defendant Anders to file a status report addressing whether he would be amenable to the Court referring the case to mediation.  (Doc. No. 60.)  In response to that Order, Defendant Anders stated that he was not interested in mediation and that he believed a trial schedule was appropriate.  (Doc. No. 62.)

Around that same time, Plaintiff filed a motion seeking the appointment of counsel.  (Doc. No. 61.)  On September 14, 2021, the Court issued an Order that conditionally granted his motion and directed the Clerk of Court to forward a copy of the Order to the Chair of the Federal Bar Association's Pro Bono Committee for the purpose of attempting to obtain counsel for

Plaintiff. (Doc. No. 63.) Thereafter, on October 29, 2021, Philip Andrew Riley, Esquire, entered his appearance on behalf of Plaintiff.[2] (Doc. No. 64.)

On March 21, 2022, the Court scheduled a telephone conference to the discuss the status of this case with counsel. (Doc. No. 65.) That telephone conference was rescheduled for May 4, 2022, at which time counsel expressed the need for additional time to complete discovery. (Doc. No. 66.) As a result, the Court set a close of fact discovery deadline of July 5, 2022, and scheduled another telephone conference for July 14, 2022, in order to determine whether a trial date, or a hearing date on the issue of whether Plaintiff had exhausted his available administrative remedies, would be necessary. (Doc. No. 68.) That conference call was rescheduled for August 3, 2022, at which time counsel indicated that it was appropriate to schedule a hearing on the issue of administrative exhaustion prior to setting pretrial deadlines and a trial date. (Doc. No. 69.)

Thus, on August 10, 2022, the Court issued an Order scheduling an evidentiary hearing and oral argument for October 14, 2022. (Doc. No. 71.) In that Order, the Court also directed the parties to submit their proposed findings of fact and conclusions of law on or before October 7, 2022. (Id.) Consistent with that Order, the parties timely filed their proposed findings of fact and conclusions of law (Doc. Nos. 73, 74) and, on October 14, 2022, the Court conducted a hearing on the issue of exhaustion of administrative remedies.

## II.    LEGAL STANDARD

The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

---

[2] The Court is appreciative of Mr. Riley's appearance in this matter as pro bono counsel.

remedies as are available are exhausted." See 42 U.S.C. § 1997e(a) (emphasis added). Exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions. See Ross, 578 U.S. at 638 (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford, 548 U.S. at 85)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

As stated above, proper exhaustion under the PLRA "mean[s] 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" See Downey, 968 F.3d at 305 (quoting Woodford, 548 U.S. at 88). And the applicable "procedural rules are supplied by the individual prisons." See id. (citations omitted); Spruill, 372 F.3d at 222 (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ." ). A prisoner's failure to follow these procedural rules will result in a procedural default of the claims, thus barring the prisoner from bringing suit in federal court. See id. at 227-32; Scott v. CO Smoke, No. 19-cv-01387, 2019 WL 7163465, at *2 (M.D. Pa. Dec. 20, 2019) (stating that prisoners "who fail to fully, or timely, complete the prison grievance process . . . are barred from subsequently litigating claims in federal court" (citing Spruill, 372 F.3d 218)).

7

A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to him. See Rinaldi v. United States, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting Woodford, 548 U.S. at 93)). "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (quoting Shifflett, 934 F.3d at 365).

Failure to exhaust available administrative remedies is an affirmative defense. See Jones, 549 U.S. at 216. Accordingly, "[t]he burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." See Rinaldi, 904 F.3d at 268 (citation omitted). However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." See id.

Finally, requiring a prisoner to exhaust available administrative remedies before filing suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." See Downey, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added)); Jones, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an

8

opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

## III. DISCUSSION

As stated above, before the Court for resolution is the issue of whether Defendant Anders met his burden to demonstrate Plaintiff's failure to exhaust available administrative remedies as required by the PLRA before asserting an Eighth Amendment claim against Defendant Anders under Section 1983. Based upon the evidence presented at the October 14, 2022 hearing[3] and upon consideration of the record as a whole, as well as the relevant authorities, the Court makes the following findings of fact and conclusions of law.

### A. Findings of Fact

1. Plaintiff was incarcerated at SCI Huntingdon in July 2018. (Doc. No. 53-1 at 11-12; Doc. No. 53 ¶ 1.)

2. Defendant Anders was a correctional officer who worked at SCI Huntingdon in July 2018. (Doc. No. 53-1 at 55; Doc. No. 53 ¶ 2.)

3. Plaintiff submitted an Official Inmate Grievance, numbered 746535 ("Grievance"), alleging that Defendant Anders had poured urine outside of his cell. (Doc. No. 53-5 at 6.)

4. The Grievance is dated July 13, 2018. (Id.)

5. The assigned grievance officer at SCI Huntingdon issued an Initial Review Response denying Plaintiff's Grievance. (Doc. No. 53-5 at 5.)

6. The Initial Review response is dated July 24, 2018. (Id.)

---

[3] During the hearing, the following three (3) individuals testified: (1) Michael Bell, a Final Review Grievance Officer for SOIGA; (2) Kevin Kauffman, a former Superintendent at SCI Huntingdon and a former Defendant in this litigation; and (3) Andrea Wakefield, the Superintendent's Assistant at SCI Huntingdon. In addition, Defendant Anders presented two (2) exhibits, both of which contained documentation of Plaintiff's grievance history as it relates to his Eighth Amendment claim against Defendant Anders. Following the hearing, Defendant Anders moved for the admission of those two (2) exhibits into evidence. (Doc. No. 80.) The Court granted that motion (Doc. No. 81) and admitted Defendant Anders' exhibits (Doc. Nos. 82-1 and 82-2) into the record.

7. Plaintiff appealed the denial of his Grievance to the Facility Manager. (Doc. No. 53-5 at 4.)

8. Former Defendant and Superintendent at SCI Huntingdon Kevin Kauffman issued a Facility Manager's Appeal Response denying Plaintiff's appeal. (Doc. No. 53-5 at 3.)

9. The Facility Manager's Appeal Response is dated August 30, 2018. (Id.)

10. Plaintiff appealed the Facility Manager's Appeal Response to the Secretary's Office of Inmate Grievance and Appeals ("SOIGA"). (Doc. No. 53-1 at 44); Doc. No. 53-2 at 6 ¶ 14.)

11. In response to Plaintiff's appeal to final review, SOIGA issued an Action Required notice ("Notice"). (Doc. No. 53-5 at 2.)

12. The Notice acknowledges receipt of Plaintiff's appeal to final review, but states that his appeal is "incomplete" for failure to provide relevant documentation. (Id.)

13. The Notice identifies the following documentation that Plaintiff is required to submit to SOIGA: a "[l]egible copy of [his] initial grievance and/or resubmitted initial grievance, signed & dated[;]" the "[i]nitial review response/rejection by Grievance Officer[;]" a "[l]egible copy of appeal to Facility Manager, signed & dated[;]" and the "Facility Manager's decision/response[.]" (Id.)

14. The Notice directs Plaintiff to submit the aforementioned documentation within fifteen (15) working days from the date of the Notice and informs Plaintiff that failure to provide the required documentation within the fifteen (15) working days "may result in dismissal of [his] appeal." (Id.)

15. The Notice includes two dates: (1) a typed date of "9/20/18[;]" and a stamped date of "RECEIVED Nov 21 2018[.]" (Id.)

16. The typed date of September 20, 2018 is the date on which Amanda West, a Grievance Review Officer at SOIGA, signed and dated the Notice. (Id.)

17. Fifteen (15) working days from September 20, 2018, is October 11, 2018.

18. The deadline for Plaintiff to provide the required documentation identified in the Notice expired on October 11, 2018. (Id.)

19. The Notice states that it was carbon copied to former Defendant and Superintendent Kevin Kauffman. (Id.)

20. SCI Huntingdon did not receive the Notice from SOIGA until November 21, 2018, as reflected by the stamped date of "RECEIVED Nov 21 2018[.]" (Id.)

21. November 21, 2018, is forty-one (41) days past the fifteen (15)-day deadline that is set forth in the Notice directing Plaintiff to submit the required documentation to SOIGA for final review of his Grievance.

22. Plaintiff did not receive the Notice until after the fifteen (15)-day deadline directing him to submit the required documentation had already expired. (Id.; Doc. No. 53-1 at 42-43.)

23. DC-ADM 804 does not provide a procedure for DOC inmates to follow when an inmate does not receive an Action Required notice until after the deadline provided for in the Action Required notice has expired. (Doc. No. 53-2 at 26-31.)

24. The only written response that SOIGA issued in response to Plaintiff's appeal to final review is the Notice. (Doc. No. 53-5 at 2; Doc. No. 53-2 at 6 ¶ 17.)

25. DC-ADM 804 provides that SOIGA has thirty (30) working days to respond to an inmate's appeal to final review "unless otherwise extended and/or referred[.]" (Doc. No. 53-2 at 29 (emphasis in original omitted).)

26. SOIGA did not extend, or otherwise make a referral, during its thirty (30)-day period to respond to Plaintiff's Grievance appeal.[4]

27. Plaintiff did not receive the Notice from SOIGA within thirty (30) working days of his appeal to final review. (Doc. No. 54-3 at 2; Doc. No. 53-1 at 42-43.)

28. Plaintiff did not receive any other response from SOIGA concerning the appeal of his Grievance to final review within thirty (30) working days. (Doc. No. 53-5 at 2; Doc. No. 56-1 at 6 ¶ 17.)

In light of these findings of fact, the Court makes the following conclusions of law.

---

[4] DC-ADM 804 explains that a referral is made "[w]hen an appeal is referred to a bureau for review (health care issues with the Bureau of Health Care Services (BHCS), education issues with the Bureau of Correction Education (BCE), etc.)[.]" (Doc. No. 53-2 at 30 (emphasis in original omitted).)

    **B.**    **Conclusions of Law**

1. Pursuant to the PLRA, exhaustion of available administrative remedies is a prerequisite for Plaintiff to assert an Eighth Amendment claim against Defendant Anders under Section 1983 regarding the conditions of his confinement at SCI Huntingdon. See Ross, 578 U.S. at 638; Jones, 549 U.S. at 211; Booth, 532 U.S. at 733-34.

2. Defendant Anders bears the burden of demonstrating that Plaintiff failed to exhaust his available administrative remedies at SCI Huntingdon. See Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013); Rinaldi, 904 F.3d at 268.

3. DC-ADM 804 provides that SOIGA has thirty (30) working days to respond to an inmate's appeal to final review "unless otherwise extended and/or referred[.]" (Doc. No. 53-2 at 29.)

4. Defendant Anders failed to meet his burden of proof to demonstrate that Plaintiff received the Notice or any other response from SOIGA within thirty (30) working days of the date of Plaintiff's appeal. (Doc. No. 53-5 at 2; Doc. No. 53-1 at 41:7-42:18; Doc. No. 56-1 ¶ 16.)

5. DC-ADM 804 does not provide a procedure for DOC inmates to follow when an inmate does not receive an Action Required notice until after the deadline provided for in the Action Required notice has expired. (Doc. No. 53-2 at 26-31.)

6. Plaintiff did not receive the Notice until after the fifteen (15)-day deadline directing him to submit the required documentation had already expired (Id.; Doc. No. 53-1 at 42-43) and, therefore, he has "fully discharged the PLRA's exhaustion requirement." See Shifflett, 934 F.3d at 365.

**IV.   CONCLUSION**

For the foregoing reasons, the Court concludes that Defendant Anders has not met his burden to demonstrate that Plaintiff failed to exhaust available administrative remedies. As a result, Plaintiff has satisfied the PLRA's exhaustion requirement. An appropriate Order follows.