**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PAUL KENDRICK,** | : | |
| **Plaintiff** | : | **No. 1:19-cv-01642** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **C.O. HANN, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the Court for resolution are three (3) motions in limine filed by Defendant Jeremy Anders ("Defendant Anders") in advance of trial in the above-captioned action scheduled to commence on February 22, 2023. (Doc. Nos. 90, 92, 94.) For the reasons set forth below, the Court will grant in part and deny in part the motions in limine.

## I. BACKGROUND[1]

Plaintiff Paul Kendrick ("Plaintiff"), a convicted and sentenced state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State Correctional Institution Fayette ("SCI Fayette") in LaBelle, Pennsylvania. He commenced this civil rights action in September of 2019 by filing a pro se complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983") concerning events that he alleges occurred while he was incarcerated at State Correctional Institution Huntingdon ("SCI Huntingdon"). (Doc. No. 1.) Named as defendants are several individuals, all of whom Plaintiff alleges worked at SCI Huntingdon during the period of time relevant to his claims. (Id.)

---

[1] At this point in the litigation, only one claim against one defendant remains—i.e., Plaintiff's Eighth Amendment claim against Defendant Anders. Thus, the Court recites the background of this case only as it is relevant to that claim.

Following a motion to amend his complaint (Doc. Nos. 31, 33, 34), Plaintiff is now proceeding on an amended pro se complaint (Doc. No. 35). In his amended complaint, Plaintiff alleges that, on July 13, 2018, while he was incarcerated in the Restricted Housing Unit at SCI Huntingdon, Defendant Anders poured urine into his cell. (Id. ¶¶ 27-30; id. ¶ 32 (alleging that Defendant Anders knew or should have known that Plaintiff is asthmatic).) As a result, Plaintiff alleges that he suffered from "extreme anxiety, severe chest pains, psychological torture, and mental anguish" and that he continues to suffer from headaches and shortness of breath "due to being asthmatic and being forced to inhale urine[.]" (Id. ¶¶ 32-33.) Based upon these allegations, Plaintiff claims that Defendant Anders violated his rights under the Eighth Amendment to the United States Constitution. (Id. ¶¶ 47-50.) Plaintiff seeks damages, as well as declaratory relief. (Id. at 7-9.)

Following the conclusion of discovery, Defendant Anders moved for summary judgment on Plaintiff's Eighth Amendment conditions-of-confinement claim. (Doc. No. 48.) In particular, Defendant Anders argued that Plaintiff had failed to exhaust his administrative remedies under the Prison Litigation Reform Act. (Doc. No. 58 at 7.) On July 12, 2021, the Court denied Defendant Anders' motion for summary judgment on exhaustion grounds, but afforded him an opportunity to file a renewed motion to address Plaintiff's claim on the merits. (Id.) As reflected by the Court's docket, Defendant Anders did not file a renewed motion for summary judgment.

On August 30, 2021, Plaintiff filed a motion seeking the appointment of counsel. (Doc. No. 61.) On September 14, 2021, the Court issued an Order that conditionally granted his motion and directed the Clerk of Court to forward a copy of the Order to the Chair of the Federal Bar Association's Pro Bono Committee for the purpose of attempting to obtain counsel for

Plaintiff. (Doc. No. 63.) Thereafter, on October 29, 2021, Philip Andrew Riley, Esquire, entered his appearance on behalf of Plaintiff.[2] (Doc. No. 64.)

After permitting a brief additional period of discovery, the Court held a telephone conference with counsel to discuss the status of this case. At that conference, counsel indicated that it was appropriate to schedule a hearing on the issue of administrative exhaustion prior to setting pretrial deadlines and a trial date. (Doc. No. 69.) Thus, on October 14, 2022, the Court conducted a hearing on the issue of exhaustion and, on October 21, 2022, the Court issued a Memorandum and Order finding that Defendant Anders did not meet his burden to demonstrate that Plaintiff failed to exhaust available administrative remedies. (Doc. Nos. 83, 84.)

As a result, the Court issued a case management Order on October 26, 2022, setting forth pretrial deadlines and a trial date. (Doc. No. 85.) Among those deadlines, the parties were directed to file any motions in limine and supporting briefs on or before January 24, 2023. (Id. at 1, 2.) In accordance with that case management Order, Defendant Anders timely filed three (3) motions in limine. (Doc. Nos. 90, 92, 94.) Those motions, which have been briefed by the parties, are ripe for the Court's resolution.

[2] The Court remains appreciative of Mr. Riley's appearance in this matter as pro bono counsel.

## II. DISCUSSION

### A. Defendant Anders' Motion in Limine to Exclude Evidence of Plaintiff's Previously Dismissed Claims at Trial

Defendant Anders has filed a motion in limine to exclude "any evidence" that pertains to claims that have already been dismissed in this litigation at the upcoming trial. (Doc. No. 90 at 1.) In support, Defendant Anders argues that, although Plaintiff commenced this civil rights action against multiple defendants, asserting a variety of claims related to separate incidents that allegedly occurred at SCI Huntingdon, there remains only one claim asserted against one defendant—specifically, Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendant Anders. (Doc. No. 91 at 1-3.) Defendant Anders argues, therefore, that any evidence pertaining to Plaintiff's other previously dismissed claims is not relevant and, further, that "[a]ny probative value of such evidence is substantially outweighed by the danger that it would confuse and mislead the jury, cause undue delay, and waste time." (Id. at 3.) As a result, Defendant Anders requests that the Court exclude "all evidence" that pertains to Plaintiff's previously dismissed claims. (Id.)

Plaintiff contends that Defendant Anders' request is too broad. (Doc. No. 112 at 2.) In addition, Plaintiff contends that such evidence is probative, not only as to the narrative context of the consistent abuse he alleges he suffered at SCI Huntingdon, but also as to a specific element of his remaining Eighth Amendment conditions-of-confinement claim—i.e., the subjective element. (Id. at 3.) In order for Plaintiff to succeed on his conditions-of-confinement claim, he must establish the following two (2) elements: "(1) the deprivation he endured was sufficiently serious, and (2) the prison officials had a sufficiently culpable state of mind." See Clark v. Coupe, 55 F.4th 167, 179 (3d Cir. 2022) (citations and internal quotation marks omitted). The first element, which is objective, "is adequately pled when the allegations depict conditions

where the inmate is denied 'the minimal civilized measure of life's necessities.'" See id. (quoting Wilson v. Seiter, 501 U.S. 294, 299 (1991)). The second element, which is subjective, "requires an inmate to sufficiently plead prison officials acted with deliberate indifference." See id. (citation omitted). A plaintiff establishes that a prison official acted with deliberate indifference where the official knew of, but disregarded, prison conditions that "posed 'an excessive risk to inmate health and safety.'" See id. (quoting Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)).

In connection with this second element (i.e., the subjective element), Plaintiff alleges that there are facts and evidence underlying some of his previously dismissed claims which are relevant to this element, and that if he were prohibited from testifying as to such facts and evidence, he would be unfairly prejudiced at the upcoming trial. (Id. at 3-6.) Thus, Plaintiff requests that the Court deny Defendant Anders' motion in limine to exclude "any evidence" regarding his previously dismissed claims. (Id. at 2 (emphasis omitted).)

The Court, having reviewed the parties' respective arguments, will grant in part and deny in part Defendant Anders' motion in limine. The Court begins its discussion with the general rule that all "[r]elevant evidence is admissible[.]" See Fed. R. Evid. 402. Evidence is "relevant" if its existence has some "tendency to make a fact more or less probable than it would be without the evidence[,]" and "the fact is of consequence in determining the action." See Fed. R. Evid. 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403.

Turning to Defendant Anders' motion in limine, the Court finds that, as a general matter, a plaintiff is not permitted to present evidence at trial regarding his claims that have already been dismissed in the litigation because evidence of such dismissed claims is, typically speaking, not relevant to a plaintiff's remaining claims. See Fed. R. Evid. 401 (explaining that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action").

That being said, however, the Court agrees with Plaintiff that, in this case, Defendant Anders' request to exclude all evidence regarding Plaintiff's previously dismissed claims is overly broad. As appropriately argued by Plaintiff, there are facts and evidence underlying some of those dismissed claims which are relevant to his remaining Eighth Amendment conditions-of-confinement claim against Defendant Anders. More specifically, evidence underlying Plaintiff's previously dismissed First Amendment retaliation and Fourteenth Amendment due process claims against former defendant Hann are relevant to Plaintiff's remaining Eighth Amendment conditions-of-confinement claim against Defendant Anders because the facts underlying these claims are necessarily intertwined.

By way of background, the Court previously summarized Plaintiff's factual allegations concerning his First Amendment retaliation and Fourteenth Amendment due process claims against former defendant Hann as follows:

> In his amended complaint, Plaintiff alleges that on July 6, 2018, while he was incarcerated at [SCI Huntingdon], Defendant Hann served him with a misconduct report stating that Plaintiff had threatened Defendant Hann and his family with serious bodily harm. On July 11, 2018, Defendant Hann denied Plaintiff his yard privileges, claiming that Plaintiff was on yard restriction due to [the] misconduct issued on July 6, 2018. Plaintiff's yard privileges were denied again on July 12 and 13, 2018. Plaintiff avers that he never received a disciplinary hearing for the misconduct report.

(Doc. No. 58 at 1 (citation, and internal citation and quotation marks omitted).)

By way of further background, Plaintiff testified at his deposition in this matter that he believed Defendant Anders had poured urine outside of his cell (i.e., the basis for his remaining Eighth Amendment conditions-of-confinement claim) because Plaintiff had, allegedly, threatened former defendant Hann.  More specifically, Plaintiff testified as follows:

> Q. Okay. So there's only one Defendant left that we haven't talked about yet. It's Anders. And he---.
>
> A. Right.
>
> Q. Is there --- it looks like there was an incident with Anders that happened at night on July 13th, 2018. I just want you to tell me about that.
>
> A. Well, again, I was in the RHU. This was about four nights after I got a misconduct --- fictitious misconduct I got from Hann, or something like that, but probably four or five nights later.
>
> And Defendant Hann was working nightshift. And all I really remember is he was coming from the bunk area --- walking to my cell with a blue carton in his hand. And the blue carton resembled like --- like the carton that coffee comes in, sort of.
>
> * * * *
>
> Anyway, the carton was --- it was a blue carton. He heads to my cell door and he poured it on the ground. And then he walks to my neighbor's cell door and did the same thing, poured it on the ground.
>
> * * * *
>
> He told me that this is what they do --- he came over to my bunk, he told me that this is what they do to the people that like to harm staff. And he told me that he --- I didn't know what exactly he poured --- but I thought it was urine. And he told me that he hoped I like the smell of piss.
>
> Then once he said that, I knew it was piss. I tried to speak to him, to get an understanding of why he was doing this, why he was treating me like an animal. And he just continued acting harassing. And he said this twice more, like slipping the substance under my door.

And he said --- he said, this is what we do to people who want to hurt staff. **And I took that as referring to the incident with Defendant Hann**.

Q. Why did you take it to be related to that incident?

* * * *

A. **Because it was --- it was close in time**.

Q. Okay . . . . So are you a hundred percent sure that was the incident he was referring to?

A. I'm going to say yes.

Q. Why are you so sure of that?

A. **Because my misconduct was threating to do bodily harm to staff**.

Q. What did Anders --- what connection does Anders have to that misconduct?

* * * *

A. Well, he's a staff member.

Q. Was he involved in the misconduct that Hann filed?

A. I'm not sure if he was --- no, I wouldn't say he was involved in the misconduct, per se. **But he --- in his mind, if someone wants to harm staff, then he would feel as though he wanted to protect the staff. He wanted to retaliate**.

Q. When you say he wanted to retaliate, like ---?

A. He was --- **he probably wanted to send a message to me. Which he did send a message. He wanted to what they would say is grind me up. He wanted to grind me up**.

* * * *

**He wanted to show me that this is what he does to staff --- this is what he does to people who want to assault staff. He wanted to show me that this is what he does to people who want to assault staff**.

(Doc. No. 53-1 at 55-59 (emphasis added).)

This testimony concerning Plaintiff's alleged threat against former defendant Hann and Defendant Anders' state of mind when he allegedly poured urine outside of Plaintiff's cell is relevant because Plaintiff's remaining Eighth Amendment conditions-of-confinement claim

requires Plaintiff to satisfy both an objective element and a subjective element in order to prevail. And, in pertinent part, the subjective element requires Plaintiff to prove that Defendant Anders acted with deliberate indifference to a substantial risk of harm to his health and/or safety. (Doc. No. 58 at 20 (explaining that, in order for Plaintiff to succeed on his conditions-of-confinement claim, he must establish that: "'(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm'" (quoting Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015))); see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) (stating that "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind" (citations and internal quotation marks omitted)).

   Accordingly, because this testimony concerning Defendant Anders' state of mind at the time he allegedly poured urine outside of Plaintiff's cell necessarily implicates other facts pertaining to former defendant Hann, the Court finds that such evidence is relevant to the issue of whether Defendant Anders acted with deliberate indifference to a substantial risk of harm to Plaintiff's health and/or safety when he allegedly violated Plaintiff's Eighth Amendment rights. For that reason, the Court will not exclude such evidence by way of Defendant Anders' motion in limine. See Fed. R. Evid. 402 (explaining that, as a general rule, all "[r]elevant evidence is admissible"). However, because Plaintiff has not pointed to any other facts regarding any other previously dismissed claims in order to show that such evidence is relevant to his remaining Eighth Amendment conditions-of-confinement claim against Defendant Anders, any evidence concerning his other previously dismissed claims or previously dismissed defendants will be excluded from presentation at trial.

### B. Defendant Anders' Motion in Limine to Introduce Evidence of Plaintiff's Prior Convictions at Trial

In addition, Defendant Anders has filed a motion in limine to not exclude, but rather introduce, evidence of Plaintiff's prior convictions of burglary, theft, and receiving stolen property at the upcoming trial.[3] (Doc. No. 92.) In support, Defendant Anders argues that these convictions are relevant to the jury's evaluation of Plaintiff's credibility at trial. (Doc. No. 93 at 2.) While Defendant Anders acknowledges that the Federal Rules of Evidence generally prohibit the introduction of evidence of prior bad acts, including criminal convictions, to show that the individual acted in conformity with such character, the Federal Rules—and Rule 609 in particular—allow for the introduction of such evidence in order to impeach a witness. (Id. at 2-3 (citing, inter alia, Fed. R. Evid. 609).) Defendant Anders argues, therefore, that Plaintiff's prior convictions of burglary, theft, and receiving stolen property are admissible for impeachment purposes. (Id. at 4.)

Plaintiff, on the other hand, contends that Rule 609 is inapplicable here. (Doc. No. 111 at 4-11.) Plaintiff further contends that, even if evidence of these convictions had some minimal probative value, introducing such evidence would be unduly prejudicial and, at best, cumulative. (Id. at 11; id. at 11-12 (averring that Plaintiff "will likely be present at trial in prison attire and even potentially shacked [sic]" and, thus, the "[t]he jury will already know that Plaintiff has previously been convicted of crimes resulting in his incarceration").) Plaintiff argues, therefore,

---

[3] Plaintiff has several prior criminal convictions, including a first-degree murder conviction and a possession of a firearm conviction. (Doc. No. 92 at 3; Doc. Nos. 92-1, 92-2, 92-3.) Defendant Anders notes that he is not seeking to introduce any evidence of these criminal convictions at trial in this matter. (Doc. No. 93 at 5 n.5.) Thus, the Court need not address these criminal convictions in this Memorandum.

that the Court should deny Defendant Anders' request to introduce evidence of his prior convictions at trial. (Id. at 12.)

Having reviewed the parties' respective arguments, the Court will grant Defendant Anders' motion and permit the introduction of Plaintiff's prior convictions for burglary, theft, and receiving stolen property as impeachment evidence at trial. Rule 609 of the Federal Rules of Evidence governs the admissibility of prior criminal convictions for the purpose of attacking a witness's character for truthfulness in both civil and criminal cases. See Fed. R. Civ. P. 609. More specifically, Rule 609 provides, in relevant part, as follows:

> **(a) In General**. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> > (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> >
> > > (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> > >
> > > (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> >
> > (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.

See Fed. R. Evid. 609. As reflected by the plain language of Rule 609, there are two (2) subsections that permit attacking a witness's character for truthfulness with evidence of a prior criminal conviction—i.e., subsection (a)(1) and subsection (a)(2). See id.

In this case, Defendant Anders is not seeking admission of Plaintiff's convictions of burglary, theft, and receiving stolen property under section (a)(2); he is only seeking admission of these convictions under section (a)(1). (Doc. No. 116 at 1 (acknowledging that these

convictions are "not . . . admissible under Rule 609(a)(2)," but maintaining that they "are highly probative for truthfulness and are admissible under Rule 609(a)(1)").)  Accordingly, the Court's discussion is focused on whether Plaintiff's prior criminal convictions of theft, burglary, and receiving stolen property are admissible under Rule 609(a)(1).

As provided above, both subsections under Rule 609(a)(1) permit attacking a witnesses' character for truthfulness with evidence of prior criminal convictions that are "punishable by death or imprisonment greater than one year[.]"  See Fed. R. Evid. 609(a)(1).  Here, neither party disputes that Plaintiff's criminal convictions of theft, burglary, and receiving stolen property fall within the scope of Rule 609(a)(1).  Moreover, the Court observes that Plaintiff's criminal convictions were felonies (Doc. No. 92-1) and were punishable by imprisonment for more than one year.  See 18 Pa. C.S. § 1103 (providing sentence terms, in the Commonwealth of Pennsylvania, for individuals who have been convicted of felonies in the first, second, and third degree); 18 Pa. C.S. § 3502 (relating to burglarly); 18 Pa. C.S. § 3921 (relating to theft by unlawful taking or disposition); 18 Pa. C.S. § 3903 (relating to theft by receiving stolen property);18 Pa. C.S. § 3903 (grading of theft offenses).

Thus, the relevant question is whether subsection (a)(1)(A) or (a)(1)(B) applies to the criminal convictions that Defendant Anders seeks to admit at trial.  Defendant Anders asserts that in a civil case, like this one, subsection (a)(1)(A) applies.  (Doc. No. 93 at 3 (averring that evidence of such prior criminal convictions must be admitted subject to the balancing test under Rule 403).)  Defendant Anders also asserts that the Third Circuit Court of Appeals has identified a number of factors for district courts to consider when determining the admissibility of such convictions under "Rule 609(a)(1)."  (Id. at 5 (citation omitted).)  And, in support, Defendant

Anders cites to Gov't of Virgin Islands v. Bedford, 671 F.2d 758 (3d Cir. 1982) ("Bedford") and sets forth his analysis as to each of these factors. (Id. at 5-10.)

In response to Defendant Anders' assertions, Plaintiff largely disputes Defendant Anders' analysis of the Bedford factors. (Doc. No. 111 at 6-11.) Like Defendant Anders, Plaintiff sets forth his own analysis as to each of these factors. (Id.) In addition, Plaintiff argues that "Rule 609(a)(1)" is subject to the balancing test under Rule 403 and that, in conducting that balancing here, he argues that permitting Defendant Anders to introduce evidence of Plaintiff's prior criminal convictions "would be unfairly prejudicial and at best needlessly cumulative." (Id. at 11.)

As an initial matter, the Court notes that both parties rely heavily on Bedford to argue whether or not Plaintiff's prior criminal convictions are admissible at trial in this matter. The Court observes, however, that the Bedford decision was issued on February 23, 1982, several years before the 1990 amendments to the Federal Rules of Evidence. Thus, at the time the Bedford decision was issued, Rule 609(a)(1) required the admission of evidence of criminal convictions that were punishable by death or imprisonment in excess of one year unless the district court determined that the "probative value" of the evidence outweighed its "prejudicial effect to **the defendant**[.]" See Bedford, 671 F.2d at 761 n.2 (emphasis added) (setting forth the version of Rule 609 in effect at the time).[4]

---

[4] More specifically, in February 1982, Rule 609(a) provided as follows:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involves dishonesty or false statement, regardless of the punishment.

In 1989, the United States Supreme Court interpreted this language to mean that the district court's discretion to exclude evidence of such criminal convictions on the basis of prejudice was applicable only to criminal defendants and that this required, therefore, the admission of such criminal convictions in civil cases, even where the prejudice of that evidence would outweigh any probative value.  See Green v. Bock Laundry Mach. Co., 490 U.S. 504, 524-27 (1989) (explaining that, under Rule 609(a), district courts lacked discretion as to whether prior criminal convictions could be admitted against civil witnesses).

In 1990, Congress responded to the United States Supreme Court's interpretation in Green by amending Rule 609(a) in order to resolve the "ambiguity as to the relationship of Rules 609 and 403 with respect to impeachment of witnesses **other than the criminal defendant**." See Advisory Committee Notes to 1990 Amendments to Rule 609 (emphasis added) (citing Green, 490 U.S. 504).  As set forth in the commentary to the Rule, the 1990 amendment reflects "the view that it is desirable to protect all litigants from the unfair use of prior convictions, and that the ordinary balancing test of Rule 403, which provides that evidence shall not be excluded unless its prejudicial effect substantially outweighs its probative value, is appropriate for assessing the admissibility of prior convictions for impeachment of any witness other than a criminal defendant."  See id.

As a result of the 1990 amendment, Rule 609(a)(1) explicitly provided as follows: evidence that a "witness other than an accused" has criminal convictions that are punishable by death or imprisonment in excess of one year "shall be admitted, subject to Rule 403[.]"  See Fed. R. Evid. 609(a)(1).  While the formatting and styling of this particular language under Rule

---

See Bedford, 671 F.2d at 761 n.2.

609(a)(1) has evolved over time, in its current form, it still requires the Court to conduct a Rule 403 balancing in order to determine whether Plaintiff's prior convictions are admissible for purposes of challenging his credibility at his upcoming trial. See Fed. R. Evid. 609(a)(1)(A) (stating that, in civil cases, qualifying criminal convictions "must be admitted, subject to Rule 403").

In such civil cases, the Third Circuit Court of Appeals has set forth a number of factors for the Court to consider when conducting this Rule 403 balancing: "(1) the nature of the conviction; (2) the time elapsed since the conviction; (3) the importance of the witness's testimony to the case; and (4) the importance of credibility to the claim at hand." See Sharif v. Picone, 740 F.3d 263, 272 (3d Cir. 2014) (citing United States v. Greenidge, 495 F.3d 85, 97 (3d Cir.2007) (citing Bedford, 671 F.2d at 761 n.4)).[5]

In evaluating the first factor, nature of the conviction, district courts consider the nature of the conviction and its relationship to the issues that remain for trial, as well as the impeachment value of the conviction. See Sharif, 740 F.3d at 272-73; United States v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014). The impeachment value of the conviction "relates to how probative the conviction is to the witness's character for truthfulness." See id. (citation omitted). Crimes of violence "have lower probative value in weighing credibility" whereas "crimes that by

[5] The Court notes that these factors are identical to the factors set forth in Bedford. The Court also notes that the Sharif Court specifically cites Bedford and Greenidge in setting forth these factors. However, both Bedford and Greenidge concern the admission of evidence of qualifying criminal convictions against defendants in criminal cases. Moreover, and as already discussed above, the Bedford decision was issued prior to the 1990 amendment to Rule 609(a). Nevertheless, the Third Circuit has elected to apply these factors in the context of a civil case. See Sharif, 740 F.3d at 272-274 (discussing and applying these factors in an inmate's Section 1983 civil rights action); Dickens v. Taylor, 655 F. App'x 941, 945 (3d Cir. 2016) (unpublished) (explaining that, when district courts are determining the admissibility of qualifying criminal convictions in a civil case, they are to conduct a Rule 403 balancing test by considering the factors set forth in Sharif).

their nature imply some dishonesty, such as theft, have greater impeachment value and are significantly more likely to be admissible." See id. (citation omitted). Here, the Court finds that the nature of Plaintiff's prior convictions of burglarly, theft, and receiving stolen property are not related to the issue that remains for trial—i.e., an Eighth Amendment conditions-of-confinement claim. However, the Court finds that the nature of these convictions imply dishonesty or, at the very least, a lack of veracity. See Sharif, 740 F.3d at 273 n.10 (noting that, "[i]n common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity[,]" as opposed to "[a]cts of violence[,] which generally have little or no direct bearing on honesty and veracity" (citation and internal quotation marks omitted)). Thus, the Court concludes that the first factor weighs in favor of admitting Plaintiff's prior convictions at trial.

As to the second factor, the time that has elapsed since the convictions, the Court observes that "[w]hen a prior conviction is not 'remote in time' from the time of trial, it is more relevant to the case at hand than when it is an older conviction." See Sharif, 740 F.3d at 273 (citation omitted). Here, even though Plaintiff's prior convictions of burglarly, theft, and receiving stolen property are almost eight (8) years old, they are "not so far remote in time as to be irrelevant." See id.; see also Fed. R. Evid. 609(b) (providing for a presumptive time limit on the admissibility of prior criminal convictions that are more than ten (10) years old); Caldwell, 760 F.3d at 287 (stating that "[c]onvictions more than ten [(10)] years old are presumptively excluded and must satisfy the special balancing requirements in Rule 609(b) to overcome this presumption"). Thus, the Court finds that the timing of Plaintiff's prior convictions weighs in favor of admission at trial.

As to the final two (2) factors—the importance of the witness's testimony and credibility—the Court observes that these factors "overlap" in this case.  See Sharif, 740 F.3d at 273.  In particular, Plaintiff's testimony is very important to his remaining Eighth Amendment conditions-of-confinement claim because he and Defendant Anders are the only witnesses scheduled to testify at the upcoming trial.  In other words, the success of Plaintiff's claim rises and falls on whether the jury will believe his testimony or the testimony of Defendant Anders.  As a result, "credibility [is] crucial" in this case.  See id. (stating that plaintiff's testimony was "crucial to his claim" and that his credibility "was paramount to his case" because he was the only person to testify on his behalf about the events that led to his lawsuit (citation and internal quotation marks omitted)); Dickens, 655 F. App'x at 945 (explaining that the third and fourth factors weighed in favor of admissibility of the plaintiff's prior criminal convictions because the "case came down to whether the jury believed [plaintiff's] testimony or that testimony of the prison officials").

Thus, upon assessing and balancing all of these factors, the Court concludes that the probative value of admitting evidence of Plaintiff's prior convictions of burglary, theft, and receiving stolen property at trial in order to attack his character for truthfulness is not substantially outweighed by the danger of any of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  See Fed. R. Evid. 403.  In reaching this conclusion, the Court recognizes that the fundamental concern with admitting evidence of these convictions at trial is that the jury may believe that Plaintiff has a propensity to act in accordance with his prior bad acts.  However, Plaintiff's prior bad acts are not related to the facts and circumstances underlying his remaining Eighth Amendment conditions-of-confinement claim against Defendant Anders.  Further, the

jury will already be aware that Plaintiff was incarcerated for committing a crime because his remaining Eighth Amendment claim stems from the conditions of his incarceration. And, finally, the Court notes that it can provide the jury with a limiting instruction as to the admissibility of Plaintiff's prior convictions. Thus, for all of these reasons, the Court finds that Plaintiff's prior convictions of burglarly, theft, and receiving stolen property are admissible under Rule 609(a)(1)(A) and, thus, the Court will grant Defendant Anders' motion in this regard.

### C. Defendant Anders' Motion in Limine to Introduce Evidence of Plaintiff's Prior Complaints at Trial

Finally, Defendant Anders has filed a motion in limine to not exclude, but rather introduce, evidence of Plaintiff's prior complaints of misconduct on the part of corrections staff, involving excrement, for the purpose of showing Plaintiff's mental state (i.e., "a fixation on bodily waste"), at trial. (Doc. No. 94 at 1.) In support, Defendant Anders explains that Plaintiff testified to the following at his deposition: Defendant Anders poured urine outside of Plaintiff's cell; and other unnamed guards put feces in Plaintiff's food on numerous occasions. (Doc. No. 95 at 2.) Defendant Anders seeks to introduce evidence of these prior complaints involving excrement in order "to prove [Plaintiff's] mental state and fixation on human waste." (Id. at 3.)

In response, Plaintiff has filed a concurrence to Defendant Anders' motion in limine to introduce evidence of Plaintiff's prior complaints at the upcoming trial in this matter. (Doc. No. 113.) Plaintiff states that he does not oppose the introduction of evidence that his food had been tampered with on occasion through the addition of feces. (Id. at 2-3.) In fact, Plaintiff asserts that "the introduction of such evidence opens the door, entitling [him] to present evidence regarding the facts and circumstances underlying his belief that he was repeatedly served adulterated food while incarcerated." (Id. at 3 (citing Fed. R. Evid. 106).)

The Court, having reviewed the parties' respective arguments, will grant Defendant Anders' concurred-in motion to introduce evidence of Plaintiff's "prior complaints of misconduct on the part of corrections staff involving excrement for the purpose of showing Plaintiff's mental state, i.e., a fixation on bodily waste, at the upcoming trial[.]" (Doc. No. 94 (underline added).) To the extent, however, that Plaintiff asserts that such evidence has opened the door, entitling him to present evidence "regarding the facts and circumstances underlying his belief that he was repeatedly served adulterated food while incarcerated[,]" (Doc. No. 113 at 3), the Court defers any ruling as to whether such evidence would be admissible until the time of trial. Deferring this ruling will enable the Court to determine the precise contours and scope of such evidence. While the parties agree that evidence pertaining to alleged misconduct on the part of corrections staff involving **excrement** is relevant for the purpose of showing either Plaintiff's mental state (as argued by Defendant Anders) or allegations that his food had been tampered with (as argued by Plaintiff), these other "facts and circumstances" referenced by Plaintiff have not been fully developed by way of briefing on the instant motion.

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant Anders' motions in limine. An appropriate Order follows.